International Union, United Industrial Workers of America, Amalgamated Local No. 286, Appellant, v. Star Products Company, Appellee.

Gen. No. 47,265.

First District, Third Division.

February 19, 1958.

Released for publication March 7, 1958.

Salvatore E. Oddo, of Chicago, for plaintiff-appellant.

Epstein, Edes & Rosen, of Chicago (Samuel Edes, of counsel) for appellee.

JUSTICE FRIEND delivered the opinion of the court.

Plaintiff union filed a complaint in equity for a declaratory judgment requesting a finding and declaration that a purported collective bargaining agreement between the union and defendant be adjudged to be "valid from its inception," and for further unspecified equitable relief. The court entered an order sustaining defendant's motion to dismiss, from which the union appeals.

The essential facts disclose that on February 29, 1956 a comprehensive contract, entered into between the union and its members on the one hand, and the defendant employer on the other, provided that the employer deduct from the wages of the employee members, and remit to the union, checkoff payments of dues of such members. The employer having failed to deduct and remit to the union these checkoff payments, a controversy arose between the union and the employer as to whether these payments should be thus deducted and remitted, the employer having made a subsequent conflicting contract with another union. The question presented is whether the Circuit Court of Cook county has jurisdiction to entertain and decide this controversy, or whether jurisdiction of the subject matter is vested exclusively in the National Labor Relations Board. The trial judge held that the gist of the case turned upon the validity of the collective bargaining agreement in interstate commerce, and that the adjudication of that question was vested by Federal law in the National Labor Relations Board, to the exclusion of any other forum.

In its complaint the union, after reciting certain facts as to the execution of the contract, setting out

verbatim the contents of some of its terms and alleging the failure of defendant to comply therewith, asserted that "the aforesaid contract . . . is valid from its inception . . ." The only specific relief sought by the complaint was an adjudication and declaration that the contract "is hereby valid from its inception . . ." No damages for breach of contract were requested, except as might be read into the general prayer for "such further relief as in equity . . . may be meet and proper." Obviously, this suit was not instituted by plaintiff as a common-law action for breach of contract but, rather, for a determination by the court of the basic validity of the agreement between the parties. However, all through its brief plaintiff seeks to make it appear that its suit is a simple common-law action for the enforcement of "the simple and historical remedy of an action for breach of contract." The insistent use of the term "breach of contract" to characterize the gravamen of the action is obviously adopted because it has been held that the National Labor Relations Board is not concerned with questions of contract breach; and since jurisdiction to deal with such issue has not been pre-empted by the Federal government, the union has on the surface abandoned its quest for a declaration as to the validity of the contract which, as indicated by the pleadings, is the basic issue in the case.

To constitute a legally enforcible instrument, a collective bargaining agreement affecting interstate commerce must meet multifarious conditions enumerated in the National Labor Relations Act (Act of June 23, 1947, c. 120 Title I, sec. 101 et seq., 61 Stat. 136, U. S. Code Title 29, secs. 151–167). The power of State courts to interpret a collective bargaining agreement affecting interstate commerce was pre-empted by section 10 (a) of the act. The United States Court of Appeals for the Fourth Circuit, in Amazon Cotton

Mill Co. v. Textile Workers Union (1948), 167 F.2d 183, was one of the first courts to address itself to the scope of section 10 (a). It held that the jurisdiction conferred upon the National Labor Relations Board was exclusive and could not be exercised by any other body except under an express cession of jurisdiction by the board. The same conclusion was reached in Precision Scientific Co. v. International Union etc. (1954), 2 Ill.App.2d 531, wherein the court held "That Congress intended that the federal agency should have exclusive jurisdiction we think is apparent . . ."

The act contains other statutory provisions affecting the validity of collective bargaining contracts. (Sec. 8 (a) (3), sec. 9 (f), (g) and (h).) It is therefore apparent that, whatever the terminology utilized, plaintiff was seeking to have a State court apply a wide variety of provisions of the act which is a procedure delegated by Congress to the exclusive judgment of the board. Specifically, the court would have been required, by plaintiff's suit, to apply the foregoing sections of the act to the question whether the plaintiff union, at the time the alleged contract was entered into, represented in fact a majority of defendant's employees in an appropriate unit for collective bargaining purposes. Unless the court so held, it could not adjudge, as plaintiff prayed, that the contract was "valid from its inception." The court was also asked to apply the provisions of section 8 (a) (3) of the act to the question whether, at the time the agreement was entered into, plaintiff had, within twelve months preceding that date, complied with the provisions of section 9 (f), (g) and (h) of the act. The court could not avoid so doing if it were to hold the contract to have binding force. Should the court have undertaken these determinations and even have held for the plaintiff on these issues, it would still have had to decide whether, after the execution of the contract and at the time

defendant entered into the subsequent agreement with Local 1031, IBEW, AFL-CIO, plaintiff was still the representative of a majority of the employees or whether a majority had defected from plaintiff and designated Local 1031, IBEW, AFL-CIO as bargaining representative; if a majority defection had occurred, whether defendant, under the provisions of section 8 (a) (5), section 8 (d) and section 9 (a) of the act, nevertheless could have continued to honor the alleged contract, or whether it was under a statutory duty to deem the contract terminated by operation of law, and, having been requested so to do, enter into superseding contractual relations with the new majority representative, Local 1031, IBEW, AFL-CIO; and how in these circumstances the validity of the contract with plaintiff was affected by the withdrawal of plaintiff from the parent AFL-CIO organization and the resultant schism between the rank and file employees and the plaintiff union under the "schism doctrine" arising under section 9 (c) of the act. These questions were fundamental and basic to any adjudication on the merits by the Circuit Court. They were squarely placed in issue by plaintiff itself. The court could not consider the merits of the controversy without directly passing upon these issues unless it chose to avoid deciding whether an enforcible instrument was before it and acting only upon the issue whether a breach of the instrument's terms had occurred. In any event, the question of breach was of subordinate and secondary interest, as appears from the complaint, which asked for a declaration that the contract was "valid from its inception."

It is significant that plaintiff union evidently recognized that the validity of the contract which it sought to have the Circuit Court construe was dependent upon provisions of the Federal statute, because it filed charges with the board, both before and after filing

326

the complaint herein, requiring the construction of the act to sustain the validity of the contract. In both instances the board recognized that it had jurisdiction of the subject matter but declined to issue its complaint or provide for formal hearing since its investigation disclosed that there was "insufficient evidence of violations" of the Federal statute.

It is conceded that the pre-emption doctrine does not wholly deprive State courts of acting in labor-relation matters. State courts have unquestioned authority in mass-picketing situations and the like which the United States Supreme Court has referred to as the "historic powers" of State courts "over such traditionally local matters as public safety and order and the use of streets and highways." (Allen-Bradley Local v. Wisconsin Employment Relations Board (1942), 315 U. S. 740, and quoted with approval in Garner v. Teamsters, Chauffeurs & Helpers Local Union No. 776 (1953), 346 U. S. 485.) Plaintiff union now seeks to bring this case within the "historic powers" of a State court, relying upon Association of Westinghouse Employees v. Westinghouse Corp. (1955), 348 U. S. 437, and United Construction Workers v. Laburnum Corp. (1954), 347 U. S. 656. The Westinghouse case involved a suit brought by a union in a Federal district court under section 301 of the Labor Management Relations Act of 1947 against an employer, alleging violation of a collective bargaining agreement by docking its salaried employees for a day on which they did not actually perform any work. Section 301 provides that suits for violation of contracts between unions and employers may be brought in a Federal district court without regard to diversity of citizenship or the amount in controversy. Mr. Justice Frankfurter, who wrote the main opinion, said that section 301 posed a serious question of constitutionality under the judicial article which permits Fed-

eral courts to exercise powers only in cases arising under the Constitution, statutes and other laws of the United States. He expressed the view that section 301 was not intended to establish a Federal common law relating to contracts and, therefore, was of doubtful constitutionality. Others members of the court disagreed with him on the constitutional issue. However, the case was decided on the narrower ground that the cause of action ran directly to the employees affected and not to the union, and was therefore dismissed on the ground that the union was an improper party. The pre-emption doctrine was not involved in the Westinghouse case and was not discussed in the opinion. Accordingly, the plaintiff union's position can be sustained only if the issue to be tried by the court were "breach of contract," but under the pleadings and character of the proceeding the question is not whether a breach of an admittedly valid contract has occurred, but, rather, whether a contract was made or, to put the question in plaintiff's own words, "was the contract valid." This query can be determined only by reference to the provisions of the National Labor Relations Act governing the validity of collective bargaining contracts. It is admittedly true that although the National Labor Relations Board lacks the power of enforcing a contract it nevertheless has the power to adjudge its validity and that power is vested exclusively in the board. The Laburnum case originated in a state court as a common-law tort action for damages, based upon tortious conduct which constituted also an unfair labor practice under the Labor Management Relations Act of 1947. It was brought by a construction corporation against three labor organizations. In resolving the issue, the court reasoned that the denial of jurisdiction to the state court, under the circumstances, would mean that, where the Federal preventive administrative procedures are impotent or

inadequate, the offenders, by coercion of the type there found, may destroy property without liability for the damage done. The facts of that case are readily distinguished from those in the case before us in that in the Laburnum case the action was not only based on violent conduct but was a common-law tort action for damages.

■■ It is urged by defendant that the two decisions of the National Labor Relations Board heretofore mentioned rendered this proceeding res judicata. The charges in these two proceedings were based upon and asserted precisely the same facts alleged in the complaint in the instant proceeding. They detailed that defendant "withdrew its recognition of the charging labor organization," notwithstanding that the company had previously executed an agreement with the union providing for exclusive recognition. By these charges plaintiff attempted to have the board declare that its contract with defendant was valid. No other purpose as the central issue is proposed for board adjudication. If the agreement were held valid defendant undeniably had committed unfair labor practices in violation of section 8 (a) (1) and (5) of the act; if invalid, defendant had not violated the statute. The board dismissed both proceedings, as heretofore stated, not because it lacked jurisdiction to determine the question, but upon the express and unequivocal ground in each case that "there is insufficient evidence of violations." Such holding by the board has been held to constitute an assumption of jurisdiction. In Graybar Electric Co. v. Automotive, Petroleum & Allied Industries Employees Union (Mo. 1956), 287 S.W.2d 795, the employer filed unfair labor-practice charges against a local union with the National Labor Relations Board; the regional director, after investigation, refused to issue a complaint, and on appeal his ruling was sustained by the general counsel for the

board. Under the circumstances, the Missouri Supreme Court held that the Missouri Circuit Court had no jurisdiction of the employer's suit against the union to enjoin picketing, whether action by the board be deemed a disposition of the case on the merits or not, and in support of its holding quoted from Retail Clerks Local No. 1564 v. Your Food Stores of Santa Fe (Tenth Circuit 1955), 225 F.2d 659: " 'Moreover, the refusal by the NLRB to entertain the instant grievance on its merits did not of itself alter the pertinent law thereby revesting the state court with authority to proceed. . . . Unless and until there is an express ceding of jurisdiction to a proper state agency exclusive jurisdiction remains in the federal agency. For sake of order such must be true. Otherwise, an interminable problem of determining jurisdiction would exist, throwing needless confusion into an area clearly pre-empted by Congress.'" In Weber v. Anheuser-Busch, Inc. (1955), 348 U. S. 468, it was held that where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the Federal act, may reasonably be deemed to come within the protection afforded by that act, a state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance. In the circumstances, it seems to us that the plaintiff union, having presented the question here at issue to the board, is bound by the former rulings of the board. The doctrine of res judicata applies. In Landreth v. Wabash R. Co. (1946), 153 F.2d 98, it was held that "the rule which forbids the reopening of a matter once judicially determined by a competent authority applies as well to the judicial and quasi judicial acts of public officers and boards as to the judgments of courts having general judicial powers."

330

In view of these conclusions it will be unnecessary to pass upon the contention of defendant that in any event a declaratory judgment would not terminate the controversy for the reason that a judgment for plaintiff in this proceeding would still leave several courses of action open for further proceedings before the National Labor Relations Board, and the further contention that plaintiff should have joined as indispensable parties Local 1031, IBEW, AFL-CIO, the recognized bargaining representative, and the National Labor Relations Board as representative of the public interest.

For the reasons indicated we are of the opinion that the Circuit Court properly dismissed the complaint, and its judgment is therefore affirmed.

Judgment affirmed.

BURKE, P. J. and BRYANT, J., concur.