2 Ill. App.3d 786 (1971)
277 N.E.2d 1
ARTHUR J. GREMAUD, Plaintiff-Appellant,
v.
GRANITE CITY STEEL COMPANY et al., Defendants-Appellees.
No. 69-110.
Illinois Appellate Court  Fifth District.
December 3, 1971.
*787 Vuagniaux & Metzger, of Edwardsville, (Earl L. Vuagniaux, of counsel,) for appellant.
Bryan, Cave, McPheeters & McRoberts, and Levin and Weinhaus, of St. Louis, Missouri, Lueders, Robertson & Konzen, of Granite City, and Cohn, Korein, Kunin and Brennan, of E. St. Louis, for appellees.
Judgment affirmed.
PER CURIAM:
 1 This action is one arising under Federal labor law which requires that individual employees wishing to assert contract grievances must use the procedure for adjustment of differences which has been agreed upon by the employer and the union as the established mode of redress. Although we are concerned with the interpretation of a labor contract all parties agree that the State Court is in the proper exercise of its jurisdiction in determining the dispute. See Horkstrom v. Stonefort Coal Mining Co., Inc., 106 Ill. App.2d 376, 246 N.E.2d 128.
Plaintiff brought his action against Granite City Steel Company, a corporation, the employer, William Baldasare, a co-employee, and United Steelworkers of America, the collective bargaining agent for both plaintiff and defendant Baldasare. The action concerns a dispute over seniority rights in the burning unit of the machine shop department of defendant company. Section 13 of the collective bargaining agreement entered into by the defendant union and defendant company provides the mode for adjustment of differences between the company and the union or its members and provides, in part, "No grievance will be considered unless it is taken up promptly through the regular procedure as outlined in this section * * *." Section 13 of the collective bargaining agreement *788 details a five-step procedure for the processing of grievances. Step 1 provides for direct settlement by the employees and the company, steps 2, 3 and 4 involve settlement by joint committees representing the company and various union jurisdictions and step 5 provides for binding arbitration. It is plaintiff's contention that he was improperly and illegally deprived of his seniority in the machine shop department and that the defendant union, his representative in the grievance procedure provided in the collective bargaining agreement, was guilty of fraud and bad faith in its representation of plaintiff in the grievance procedure.
Defendant Baldasare was first employed by the company in 1933 and started working in the machine shop in 1947. He was first employed as a burner in 1942 and 1943 and at that time had a millwright job classification which he continued to hold until his retirement, which occurred during the pendency of this lawsuit. Baldasare began thermit welding on November 20, 1947, a job that required that he continue to do burning. Burning has always been part of the thermit layout job and when a man is preparing a thermit welding job there is always a certain amount of burning to do. The thermit layout section was located in the same place as the burner unit  side by side in the machine shop.
The plaintiff began working at defendant company in 1948. On February 9, 1949 he became a "starting burner" and was promoted to "regular burner" in August 1949.
Although Baldasare was a thermit welder and burner, he was given a millwright rating because of his ability to handle a number of different jobs and from 1947 on Baldasare carried his departmental seniority in the machine shop department until late in 1956 when the millwrights formed their own department.
Baldasare continued to carry his seniority in the burner unit and when the millwright department was transferred from the machine shop he did not change his unit seniority. Because Baldasare wanted to protect his departmental seniority as a millwright, even though retaining his burner unit seniority in the machine shop, company and union representatives negotiated and entered into a "Promotional Line Agreement" dated February 25, 1957. The company representative who negotiated and signed the Promotional Line Agreement with the Union Joint Committee was superintendent of the machine shop at the time. He explained that the reason for negotiating the agreement was that when the millwrights separated themselves from the machine shop and formed their own department, inasmuch as the burner unit was in the machine shop department and Baldasare's departmental seniority was in the millwright department, the parties recognized and agreed that Baldasare's seniority *789 in the burner unit had to be protected so that he would continue to be the oldest man in the burner unit. Although defendant disputes the interpretation of the effect of the Promotion Line Agreement it nevertheless sufficiently appears that it was made to permit defendant Baldasare to maintain his seniority in the millwright department and also as the senior burner in the machine shop department. The burning had apparently been done historically by Baldasare and upon the separation of the millwright department from the machine shop department Baldasare, the burner, went with the burning job in the transfer of the burning job to the machine shop department. Baldasare had no seniority rights in the machine shop department than as a burner. Plaintiff, except as a burner, was the senior employee in the machine shop department. Baldasare always exercised his unit seniority rights over plaintiff on choice of work schedules and vacations.
The company laid off plaintiff in the work week scheduled for June 10, 1962. On June 7, 1962, he filed his grievance claiming that performance of the burning work by Baldasare would violate plaintiff's seniority since he had higher seniority over Baldasare in the machine shop. The grievance was determined against plaintiff by the company and shortly thereafter the Union Joint Committee withdrew the grievance. Thereafter, on September 26, 1962, plaintiff filed another grievance identical to that filed in June, the latter grievance being prosecuted by plaintiff personally rather than through the Union Joint Committee. This grievance was determined against plaintiff at step 3 and was not processed beyond that step by either the Union Joint Committee or plaintiff. Plaintiff did, however, express dissatisfaction and retained counsel to protest the disposition and pursue the matter further. In due time plaintiff was called back to work and nothing further was done with regard to the 1962 grievances.
On April 1, 1967, plaintiff was again laid off for lack of work and Baldasare was retained to do the burning work. On April 13, 1967, plaintiff filed his Grievance No. 124-67-4, which was the same complaint made in 1962 and rejected. He alleged, in essence, that he had seniority over Baldasare in the burner unit of the machine shop; that beginning April 1, 1967, Baldasare was performing all the burning work; that he had seniority over Baldasare in the burner unit, and that his seniority rights were being violated. It was the position of both the company and the Union Joint Committee that the matter of burner seniority had been disposed of in the 1962 grievance and that nothing had intervened to change their position with regard thereto. The Union Joint Committee declined to request that the matter proceed further. The plaintiff, through his *790 counsel, requested that the matter proceed to arbitration provided for as step 5 of the grievance procedure but both the company and the union declined and the instant court action followed.
 2-5 The record establishes that the union accepted plaintiff's grievance, considered and reviewed it, processed it, had the issue of the "Promotional Line Agreement" analyzed by their representatives, reached agreement with the employer at step 3 of the grievance procedure, and at that point took the position that the matter was concluded. The Supreme Court of the United States in Humphrey v. Moore, 375 U.S. 335, 84 S.Ct. 363, 55 L.R.R.M. 2031, observed that "* * * a union must be free to sift wholly frivolous grievances which would only clog the grievance process * * *." The trial court in the instant case explained its decision in part by stating, "If an employee would process his own grievance regardless of the settlement reached by the Union and the Company, there would seldom be a settlement in the early steps of the grievance procedure and the Union's efforts to settle would carry little weight." Add to these two pronouncements, Congress' description of the National Labor Relations Act as "An Act to diminish the causes of labor disputes * * *," (29 U.S.C. ch. 7, sec. 151, et seq.) and it is clear that in the absence of fraud, gross neglect, or unfair collusion between the employer and the union  in short "bad faith" representation by the union  the settlement reached is binding on plaintiff and should not be disturbed by this court. Since at the conclusion of consideration of plaintiff's grievance between company and the Union Joint Committee plaintiff's grievance was found without merit and the seniority rights of Baldasare were paramount, it is understandable that plaintiff would be dissatisfied and feel himself the object of discrimination, fraud and unfair treatment. Yet at that point in the proceedings when the Union Joint Committee determined that plaintiff's grievance was without merit it became their right, and under section 13 of the collective bargaining agreement, even their duty, to cease further representation of plaintiff in presenting his grievance. We find nothing in the record to show anything other than that fair consideration and treatment was accorded plaintiff's grievance by the Union Joint Committee. That he ultimately did not prevail cannot be construed as a showing that the union was guilty of fraud, gross neglect, or unfair collusion with the company in disposing of his grievance. The record in this case is bare of any evidence of bad faith or breach of duty for fair representation. As stated by the Supreme Court in Vaca v. Sipes, 386 U.S. 171:
"A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining agreement is arbitrary, discriminatory, or in bad faith."
*791 Also see Horkstrom v. Stonefort Coal Mining Co., Inc., supra.
This was a dispute over the interpretation and application of the seniority provisions of the contract between the Steelworkers Union and Granite City Steel Company. Patently, the contract, which devotes 48 pages to the subject of grievances, is intended to cover any disputes regarding seniority. Bieski v. Eastern Automobile Forwarding Co. (3rd cir., 1968), 396 F.2d 32, was a case involving seniority rights of different groups of employees, where, as here, a decision was made by a joint grievance committee pursuant to the contract, and there the court held:
"If * * * the contract procedure was intended to cover the dispute and, in addition * * * the intended procedure was adequate to provide a fair and informed decision, then review of the merits of any decision should be limited to cases of fraud, deceit or instances of unions in breach of their duty of fair representation."
This court accepts and follows the logic, reasoning and interpretation of the law expressed in the above cited cases and finds no exception in the instant case. The plaintiff raises and argues other issues but we have determined them to be without merit and no purpose would be served by a further discussion of them here.
Accordingly, the judgment appealed from is affirmed.
Judgment affirmed.