J. D. ALEXANDER *et al.*, Plaintiffs-Appellees, *v.* STANDARD OIL COMPANY *et al.*, Defendants-Appellants.

Fifth District   No. 76-214

Opinion filed October 6, 1977.

EBERSPACHER, J., dissenting.

John W. Noble, Jr., Martin M. Ruken, and Robert J. Rubin, all of Chicago, and James K. Almeter, of Alton (Friedman & Koven and Hoagland, Maucker, Bernard & Almeter, of counsel), for appellants.

Edward L. Welch, of Edwardsville, for appellees.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

This case involves a dispute over commission rates between the plaintiffs, individual commission agents, and the defendants, American Oil Company and Standard Oil Company. The plaintiffs are employees of the defendants pursuant to individual contracts of employment, and are also members of the Central States Petroleum Union, Local 123, which serves as the plaintiffs' collective bargaining agent with the defendants.

On September 1, 1970, a "working agreement" was executed between

Local 123 and the defendants. The agreement provided that defendants would pay each plaintiff:

> (a) a percentage commission based on plaintiffs' sales of specified products, and
>
> (b) a commission based on a percentage of the gross sales price on defendants' direct sales of other products to plaintiffs' customers within each plaintiff's territory (cross-sell commission arrangement).

The plaintiffs' individual contracts with defendants contain similar provisions which are meshed with the union negotiated working agreement, the total relationship between an individual agent and the defendants being governed by both agreements. However, the working agreement is to govern and control all inconsistencies with the individual contracts except as to duration and termination in which case the individual contract governs.

Collective bargaining for a new contract between the defendants and the union commenced prior to the working agreement's expiration date of August 31, 1973. The contract was extended until August 31, 1974, during which time collective bargaining continued. In bargaining for the new contract the defendants maintained that the inflated cost of petroleum products had created windfall profits for the agents and hence proposed:

> (1) that plaintiffs' commissions be based on the price in effect on September 1, 1973, and
>
> (2) elimination of the cross-sell commission arrangement.

The defendants announced that this position would be implemented in the event of a bargaining impasse.

On November 21, 1974, the union filed charges before the National Labor Relations Board claiming that defendants violated sections 8(a)(1) and (5) of the National Labor Relations Act (NLRA) (29 U.S.C. §151 *et seq.*) by seeking to implement company proposals without bargaining in good faith.

On January 1, 1975, defendants began paying commissions to plaintiffs based on the September 1, 1973, price rate and discontinued the cross-sell commissions.

On May 9, 1975, the Acting Regional Director of the National Labor Relations Board refused to issue a complaint on the charges filed by the union. This decision was upheld on appeal by the General Counsel's office on July 16, 1975.

On March 1, 1976, the plaintiffs filed a complaint against the defendants in the circuit court of Madison County alleging approximately $400,000 in damages for breach of contract. Damages were based upon nonpayment of cross-sell commissions and the difference between commissions

actually paid (based on September 1, 1973, prices) and a higher rate claimed, for sales made after January 1, 1975. Defendants moved to dismiss the complaint on the ground that jurisdiction of the court was preempted by the National Labor Relations Act. Agents who chose not to become jobbers were either continued as agents or terminated according to a "Mutual Cancellation of Employment" and a "Final Settlement Agreement." Both of the agreements contained language which could be pleaded in bar of the damage claim. Consequently, plaintiffs moved the trial court to restrain and enjoin defendants from requiring plaintiffs to sign such agreements as a condition of conversion to jobber status.

An evidentiary hearing regarding defendants' motion to dismiss and plaintiffs' motion for a preliminary injunction was held on March 22, 1976. On March 29, 1976, the trial court denied both the motion to dismiss and the motion for a preliminary injunction. Defendants then filed a motion to reconsider, requesting in the alternative the specific findings necessary under Supreme Court Rule 308 (Ill. Rev. Stat. 1975, ch. 110A, par. 308), which led to this appeal. Plaintiffs filed a motion in opposition thereto and renewed their request for a preliminary injunction in the event the trial court made the requisite findings for this appeal. The trial court denied the motion to reconsider, entered the requisite findings, and granted the preliminary injunction. Defendants then filed an interlocutory appeal from the injunctive order.

This court granted leave to appeal on the jurisdictional issue and consolidated the appeals.

The primary issue to be considered is whether the circuit court has jurisdiction to hear and decide a claim of contract violation or whether such jurisdiction is preempted by the National Labor Relations Act. We believe the circuit court's jurisdiction is not preempted by Federal law.

The preemption doctrine is predicated on the theory that a single national labor policy is desirable and that such policy can best be administered and applied by the National Labor Relations Board. Consequently, "when an activity is protected by section 7 of the NLRA or prohibited by section 8 of that act, State jurisdiction is preempted." (*May Dept. Stores Co. v. Teamsters Union Local 743*, 64 Ill. 2d 153, 159, 355 N.E.2d 7, citing as authority *Weber v. Anheuser-Busch, Inc.* (1955), 348 U.S. 468, 99 L. Ed. 546, 75 S. Ct. 480.) It is also clear that " '[w]hen an activity is arguably subject to section 7 or section 8 of the Act, the States * * * must defer to the exclusive competence of the National Labor Relations Board * * *.' " *May Dept. Stores*, 64 Ill. 2d 153, 159, citing *San Diego Building Trades Council, Local 2020 v. Garmon*, 359 U.S. 236, 245, 3 L. Ed. 2d 775, 783, 79 S. Ct. 773, 780.

The preemption doctrine is not however, a doctrine without exceptions. In *Garmon* the Supreme Court noted that State jurisdiction

was not preempted "where the activity regulated was a merely peripheral concern of the Labor Management Relations Act" or "where the regulated conduct touched interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." 359 U.S. 236, 243-44, 3 L. Ed. 2d 775, 782, 79 S. Ct. 773, 779.

■■ Furthermore, the mere filing of a charge by the plaintiffs' union before the NLRB does not divest the State court of jurisdiction which otherwise results from the exceptions listed in *Garmon*. (*May Dept. Stores v. Teamsters Union Local 743*, 64 Ill. 2d 153, 355 N.E.2d 7.) Nor does the refusal of the general counsel of the NLRB to issue a complaint bar suit for violation of the collective bargaining agreement. (See *Sheet Metal Workers Local 59 v. J. E. Workman, Inc.*, 343 F.Supp. 480 (D Del. 1972); *Ruzicka v. General Motors Corp.*, 336 F.Supp. 824 (E.D. Mich. 1972).) The refusal to issue a complaint is not res judicata because it is not final. *NLRB v. Baltimore Transit Co.*, 140 F.2d 51 (4th Cir. 1944), *cert. denied*, 321 U.S. 795, 88 L. Ed. 1084, 64 S. Ct. 848 (1944).

Relying on *Lodge 76, International Association of Machinists & Aerospace Workers v. Wisconsin Employment Relations Com.*, 427 U.S. 132, 49 L. Ed. 2d 396, 96 S. Ct. 2548, and *People v. Federal Tools & Plastics*, 62 Ill. 2d 549, 344 N.E.2d 1, defendant contends that the circuit court's jurisdiction is preempted. Both cases involved a finding of preemption in an area Congress intended to remain unregulated and left to the free play of economic forces, commonly referred to as "economic self-help." However, we believe that breach of contract was not an area intended by Congress to fall within the preemption principle. Congress specifically rejected a proposal that would have made a breach of contract an unfair labor practice, and hence, subject to the NLRB. Instead, Congress decided to make collective bargaining agreements enforceable in the courts. (See *Charles Dowd Box Co. v. Courtney*, 368 U.S. 502, 7 L. Ed. 2d 483, 82 S. Ct. 519.) By making collective bargaining agreements enforceable in the courts, we believe it was not the intent of Congress to leave breach of contract matters to the free play of economic forces. Therefore, we hold that the economic self-help doctrine is inapplicable to this case. See *May Dept. Stores v. Teamsters Union Local 743*, 64 Ill. 2d 153, 355 N.E.2d 7.

■■ Plaintiffs contend that the trial court had jurisdiction to entertain their action under section 301 of the Labor Management Relations Act (LMRA) (29 U.S.C. §185). Defendants argue that plaintiffs' reliance on section 301 of the LMRA is misplaced since the collective bargaining agreement had expired well before the date of the alleged breach.

Section 301 of the LMRA specifically provides that:

"Suits for violation of contracts between an employer and a

labor organization representing employees in an industry affecting commerce * * * may be brought in any district court of the United States having jurisdiction of the parties * * *."

As interpreted by the courts, section 301 of the LMRA does not preempt State court jurisdiction. The various State courts exercise concurrent jurisdiction with the Federal courts over actions involving the construction or enforcement of collective bargaining agreements. (*Humphrey v. Moore*, 375 U.S. 335, 11 L. Ed. 2d 370, 84 S. Ct. 363; *Gremaud v. Granite City Steel Co.*, 2 Ill. App. 3d 786, 277 N.E.2d 1; *American Device Manufacturing Co. v. International Association of Machinists*, 105 Ill. App. 2d 299, 244 N.E.2d 862; *Gordon v. Thor Power Tool Co.*, 55 Ill. App. 2d 389, 205 N.E.2d 55.) This is true even though the breach may also constitute an unfair labor practice subject to the NLRB's jurisdiction. (*Smith v. Evening News Association*, 371 U.S. 195, 9 L. Ed. 2d 246, 83 S. Ct. 267; *Vaca v. Sipes*, 386 U.S. 171, 17 L. Ed. 2d 842, 87 S. Ct. 903.) We agree that the collective bargaining agreement expired prior to the alleged breach and note that section 301 does not apply to a breach of contract action based on an agreement between an employer and an individual employee. The enactment of section 301, however, evinces a clear Congressional intent that regulation of the contractual relationship between employers and union members not be left solely to the NLRB or the "free play" of market forces. Moreover, since Congress has determined that Federal or State court adjudication of collectively bargained contract rights does not unduly interfere with a uniform system of labor relations law, then clearly State court adjudication of employer and employee rights under individual contracts cannot be said to present such an impediment to the uniform regulation of collective bargaining as to require Federal preemption of State court jurisdiction over these actions. We conclude, therefore, that the individual contracts involved in this case, although closely linked to a collective bargaining agreement between the parties, may be the subject of an enforcement action in State courts.

■■ The agents negotiated their contracts with Standard through an organization known as the Central States Petroleum Union, Local 123. This organization negotiated with Standard for purposes of changing levels of commissions and other remunerations received by the agents. The individual contracts between Standard and the individual agents, which granted the agents exclusive territories and provided that they would be paid commissions, were meshed with the union negotiated "Working Agreement." The total relationship between an individual agent and Standard was governed by both agreements, but if any inconsistencies occurred, the provisions of the collective bargaining agreement would supersede the provisions of the individual contracts.

(Working Agreement, article VI, section 6.2.) However, notwithstanding section 6.2, section 6.3 of article VI expressly provides that "the duration and termination of the individual employment contracts shall be governed by the provisions of such individual contracts." Although the working agreement expired on August 31, 1974, the record fails to indicate any termination of the individual contracts. A State or Federal court would be without jurisdiction in this case to entertain an action under section 301 of the LMRA since the collective bargaining agreement expired before the alleged breach. However, the action involved here is one for breach of contract brought by individual employees against their employer and Illinois contract law will be determinative of the rights and liabilities of the parties to this action.

The defendants also appeal from the granting of a preliminary injunction in favor of the plaintiffs. The injunction prohibits the defendants from requiring the plaintiffs, as a condition to their conversion from commissioned agent to jobber status, to sign a contract which contains a provision for mutual release of claims. Although its legal effect has not been determined, this provision purports to release the defendants from liability in the present action and would be pleaded as a bar thereto.

Defendant contends the evidence was not sufficient to support a finding of economic duress or irreparable harm and that the injunction should not have issued.

The relevant section of the conversion agreement contract is set forth as follows:

> "9. MUTUAL RELEASE OF CLAIMS, CAUSES & LIA-BILITIES.
>
> (a) With only those exceptions stated in subparagraph (b) of this Paragraph 9, and in consideration of the execution of the Agreement, AMOCO and BUYER mutually and conditionally release and discharge each other from any and all claims, causes of action and liabilities, whether known or unknown, arising from any agreement, transaction or course of dealing between the parties or from AMOCO's policies and practices up to and including the date of this Agreement.
>
> (b) Subparagraph (a) of this Paragraph shall not affect: (i) AMOCO's obligation to BUYER under Company Employee benefit plans and the Agents' Severance Allowance Plan as accrued to the Closing Date, (ii) Buyer's obligation to account for AMOCO's funds and merchandise handled by BUYER as agent, or (iii) AMOCO's and BUYER's performance under current agreements and leases between the date of this Agreement and the Closing Date."

A preliminary injunction is a drastic provisional remedy and is granted

before the hearing on the merits in order to preserve the status quo or avert a threatened wrong (*Summit Electric Co. v. Mayrent*, 17 Ill. App. 3d 545, 308 N.E.2d 313). An appellate court, on an interlocutory appeal from a preliminary injunction, does not decide controverted questions of fact or consider the merits of a case. (*Schwalm Electronics, Inc. v. Electrical Products Corp.*, 14 Ill. App. 3d 348, 302 N.E.2d 394.)

> "The issuance of a preliminary injunction is within the sound discretion of the trial court upon a *prima facie* demonstration of necessity and a court of review will not set aside the injunction order unless there is a manifest abuse of discretion or an error of law." *K.F.K. Corp. v. American Continental Homes, Inc.*, 31 Ill. App. 3d 1017, 1020, 335 N.E.2d 156.

■■■ The discretion of the trial court must, of course, be exercised within the established legal groundwork for injunctive relief. The party seeking the preliminary injunction must establish that the legal remedies are inadequate, that the party will be immediately and irreparably harmed unless the injunction issues, and that the party seeks to protect a lawful right. (*K.F.K. Corp. v. American Continental Homes, Inc.*, 31 Ill. App. 3d 1017, 335 N.E.2d 156.) A fourth condition, the showing of a probability of success upon the resolution of the case on the merits, is sometimes added. (*Professional Business Management, Inc. v. Clark*, 83 Ill. App. 2d 236, 227 N.E.2d 371.) However, there are exceptions to the necessity of establishing probable success on the merits. If the subject of the injunction is property which may be destroyed, or if, as here, the plaintiff seeks only to maintain the status quo until the ultimate issue is decided, "the injunction is properly allowed or maintained even where there may be serious doubt as to the ultimate success of the complaint." *Fishwick v. Lewis*, 258 Ill. App. 402, 410; see also *Hoffman v. Wilkins*, 132 Ill. App. 2d 810, 270 N.E.2d 594.

■■ The first issue for consideration is whether the plaintiffs have established the inadequacy of their legal remedies. Although the legal effect of the release provision has not yet been determined, and there is the possibility that the release will be held to be invalid, the legal remedy is not adequate per se. The remedy at law must not only exist, but must also be clear, complete and as effective as the equitable remedy in promoting the ends of justice. (*McGinniss v. First National Bank*, 214 Ill. App. 295; *Freeman v. Freyer*, 30 Ill. App. 2d 185, 174 N.E.2d 217.) The legal remedy in the case at bar is uncertain at best. It would require unnecessary time and expense to litigate the validity of the release before reaching the grounds of the ultimate decision. Failure to establish the invalidity would, of course, bar the plaintiffs from further proceedings. Under these circumstances, the remedy at law is clearly inadequate.

The issue of irreparable harm may also be resolved without difficulty.

The provision in the conversion agreement purports to release the defendants from liability under the present cause of action. If given its natural construction, the provision would effectively bar the plaintiffs from maintaining their breach of contract action. The threat of injury is thus severe, and the trial court did not abuse its discretion in its finding. *K.F.K. Corp. v. American Homes, Inc.*, 31 Ill. App. 3d 1017, 335 N.E.2d 156.

Defendants also contend the evidence at the hearing was not sufficient to establish economic duress. Duress is a question of fact to be determined by the totality of the surrounding circumstances. It is established by a showing that the circumstances left the complaining party bereft of the quality of mind essential to the making of a contract, such that he is unable to exercise his free will. *Slade v. Slade*, 310 Ill. App. 77, 33 N.E.2d 951; *Joyce v. Year Investments, Inc.*, 45 Ill. App. 2d 310, 196 N.E.2d 24.

In seeking a preliminary injunction, however, the plaintiffs need not establish economic duress as a matter of law as the injunction does not determine the validity of the release provision. They need only make a prima facie showing of immediate threat of irreparable harm.

The testimony indicates that defendants were in the process of a nationwide conversion program whereby commissioned agents would be accorded jobber status. In order to convert to jobber status, the agents were required to sign a contract containing the provision in issue here. The testimony of defendants' representative indicated that the provision was nonnegotiable. If the agents chose not to convert, they would be required to sign a mutual cancellation of employment agreement and a final settlement agreement. Testimony before the trial court indicates that a provision with substantially the same language of release was likewise included in those agreements. If the agent chose not to sign he would not receive severance pay.

While the evidence may not have been sufficient to establish economic duress as a matter of law, we cannot say the trial court abused its discretion in finding the threat to plaintiffs' maintenance of this suit was serious, immediate and irreparable. The decision of the trial court is accordingly affirmed.

Affirmed.

KARNS, J., concurs.

Mr. JUSTICE EBERSPACHER, dissenting:
Were this the simple common law action sounding in contract in which a contract between the parties is alleged along with allegations of a

breach and resulting damages, as is urged by plaintiffs, I could agree that Federal labor preemption does not apply. Here the majority has acknowledged that the claim of contract violation is enmeshed and closely linked with allegations regarding working agreements which have been terminated by agreement of the parties, collective bargaining steps previously taken by their union on plaintiffs' behalf and the defendant having engaged in that bargaining and defendants' unilateral implementation of their final negotiating position. As a result the trial court would be forced to analyze various Federal statutes and policies central to the labor scheme to determine what if any contract is in existence, and to instruct the requested jury in those particular fields. From the allegations it could be reasonably concluded that plaintiffs hope to try defendants before a jury for an alleged breach of contract arising from alleged unfair labor practice since collective bargaining has created an impasse. Regardless of what has been decided as to the intent of Congress, to be implied or stated by the cases, from its enactment of the National Labor Relations Act (29 U.S.C. §151 *et seq.*), no one has ever suggested that the effect of its enactments in the labor field were to give State courts a right to review the action of the National Labor Relations Board in refusing to issue a complaint for an alleged unfair labor practice, in this case on an alleged failure to bargain in good faith, even though the refusal to issue a complaint is not res judicata.

The allegations of this complaint are certainly "arguably" within the scope of N. L. R. A. and the fact that in *San Diego Building Trades Council, Local 202 v. Garmon,* 359 U. S. 236, 3 L. Ed. 2d 775, 79 S. Ct. 773, exceptions to preemption were recognized, does not make *Garmon* inapplicable to this case of a factual situation not embraced in the pronounced exception. Numerous other United States Supreme Court cases (see *Lodge 76, International Association of Machinists & Aerospace Workers v. Wisconsin Employment Relations Com.,* 427 U.S. 137, 49 L. Ed. 2d 396, 96 S. Ct. 2548; *Teamsters Local 20 v. Morton*; 377 U.S. 252, 12 L. Ed. 2d 280, 84 S. Ct. 1253 *NLRB v. Insurance Agents International Union,* 361 U. S. 477, 4 L. Ed. 2d 454, 80 S. Ct. 419; *May Department Stores Co. v. NLRB,* 326 U. S. 376, 90 L. Ed. 145, 66 S. Ct. 468; and *Medo Photo Supply Corp. v. NLRB,* 321 U. S. 678, 88 L. Ed. 1007, 64 S. Ct. 830), while not in point in every aspect are sufficiently similar to the case at hand to place the conduct of which plaintiffs complain within the scope of the National Labor Relations Act and the preemption doctrine. Illinois courts have not been hesitant to follow the preemption doctrine and have consistently followed the *Garmon* rule.

In *People v. Federal Tool and Plastics,* 62 Ill. 2d 549, 344 N.E.2d 1, our supreme court found *Morton* controlling. In *Gust G. Larson & Sons, Inc. v. Radio & Television Broadcast Engineers Local Union No. 1220,* 66 Ill.

App. 2d 146, 213 N.E.2d 100, the court relied on *Garmon* as well as other Federal cases supporting preemption. A similar situation arose in *International Union v. Star Products Co.*, 16 Ill. App. 2d 321, 148 N.E.2d 43 (1st Dist. 1958). There, plaintiff brought a declaratory judgment action requesting a finding that a purported collective bargaining agreement was valid from its inception. The trial court dismissed the action for want of jurisdiction on the ground of preemption. At the appellate court, plaintiff argued that its suit was based on a common law breach of contract and that the doctrine of preemption has no application with respect to breaches of contract. Commenting on plaintiff's argument, the appellate court noted:

> "However, all through its brief plaintiff seeks to make it appear that its suit is a simple common-law action for the enforcement of 'the simple and historical remedy of an action for breach of contract.' The insistent use of the term 'breach of contract' to characterize the gravamen of the action is obviously adopted because it has been held that the National Labor Relations Board is not concerned with questions of contract breach; * * *." (16 Ill. App. 2d 321, 324, 148 N.E.2d 43, 45.)

The appellate court recognized that the trial court would be forced to examine various NLRA provisions (among which was 8(a)(5)) to decide the validity of the agreement. The appellate court found the plaintiff's cause of action thus preempted.

At the injunction hearing the only evidence advanced was presumably intended to show that duress and economic coercion were being applied to plaintiffs in order to secure the conversion agreements which were required if plaintiffs *chose* to convert from commissioned agent to jobber status. In order to establish duress or economic coercion, it is necessary for a party to establish conduct which constitutes a "threat" sufficient to meet the standards set forth by our supreme court in *Kaplan v. Kaplan*, 25 Ill. 2d 181, 182 N.E.2d 706. Furthermore, as a matter of law duress cannot be established where the alleged "threat" leaves a party a choice as to whether he would do the thing or perform the act said to be performed under duress (*Joyce v. Year Investments, Inc.*, 45 Ill. App. 2d 310, 196 N.E.2d 24), or where the alleged threat contemplates conduct which the exerting party can lawfully take (*Fabert Motors, Inc. v. Ford Motor Co.*, 355 F.2d 888 (7th Cir. 1966)). In the evidence offered, including the testimony of plaintiffs' counsel, there is no evidence of threat or conduct which would leave plaintiffs "bereft of the quality of mind essential to the making of a contract" and all the evidence is that plaintiffs had a choice. As a result the court below had no sufficient basis to warrant the issuance of injunctive relief, either in law or fact. Irreparable harm was neither pleaded or proved. For these reasons I would reverse.