MAY DEPARTMENT STORES COMPANY *et al.*, Plaintiffs-Appellees, *v.* THE TEAMSTERS UNION LOCAL No. 743 *et al.*, Defendants-Appellants.

(No. 61678;

First District (3rd Division)—October 2, 1975.

Lester Asher, Marvin Gittler, and Anne Harmon, all of Chicago, for appellants.

Friedman & Koven, John W. Nobel, James K. Gardner, and David Altman, all of Chicago, for appellees.

Mr. JUSTICE DEMPSEY delivered the opinion of the court:

Venture Stores, Inc., a subsidiary of May Department Stores Company, operates a department store in the Village of Oak Lawn which opened for business in March 1975. In February of that year, the Teamsters Union Local No. 743 and its director of organization, Robert Simpson, sought to persuade Venture employees and prospective employees to join their union. Venture filed a complaint for a permanent injunction and a petition for a temporary restraining order to enjoin the union and its representatives from soliciting employees on Venture's premises. The complaint charged that the organizational campaign was carried on despite State and Village antitrespass laws, despite requests that it be stopped and despite the store's posted rule prohibiting solicitational activity for any purpose by either employees or nonemployees. A copy of the rule was attached to the complaint.

The defendants filed a motion to dismiss. Among the reasons advanced for the dismissal were that the National Labor Relations Act had preempted the State's jurisdiction; that the Illinois statutes prohibited restraining orders in cases growing out of disputes concerning conditions of employment; that a protest had been lodged with the regional office of the National Labor Relations Board and therefore the administrative rights of the plaintiffs had not been exhausted. A copy of the protest accompanied the motion as did an affidavit by Simpson stating that the organizing efforts were made outside the store and were limited to the hours before it opened and after it closed.

After hearing the testimony of one witness and the arguments of counsel, the court issued a ten-day temporary order restraining the defendants from soliciting the plaintiffs' employees on the premises owned by the plaintiffs but permitting it on adjacent public sidewalks. Ten days later the plaintiffs' motion for a preliminary injunction was granted. The terms of the injunction paralleled those of the restraining order.

The issue presented for review is whether a State court may enjoin under antitrespass laws, conduct arguably protected by the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151—168 (1970).

The defendants concede that the solicitation took place on premises owned by the plaintiffs, but in the trial court they disputed this and the lone witness who testified was called by the plaintiffs to prove ownership. His testimony and the exhibits received in evidence established May's ownership of a block of property in Oak Lawn that is bounded on the north by 95th Street, on the south by 96th Street, on the east by

Crawford Avenue and on the west by Keeler Avenue. Located on this tract is a large building which Venture shares with an Atlantic & Pacific food store. There is a sidewalk in front of both stores and a spacious parking lot surrounds the building on three sides. When this litigation began a gasoline station was under construction on the property; the station was owned by May and was to become a department of the Venture store. There is no sidewalk nor parking space on the 96th Street side of the tract, but sidewalks built by the plaintiffs and dedicated to public use border the other three sides. The sidewalk running along 95th Street is intersected by an entrance and exit sufficiently large to accommodate two cars going each way. There is an entrance and exit of unspecified size on the Crawford and Keeler sides as well.

The union representatives, none of whom were employed by the store, conducted their campaign at the entrance of the store before and after normal business hours. The purpose of the nonobstructive campaign was to acquaint the store's employees with the advantages of union membership and with their organizational and bargaining rights under the NLRA. Venture officials repeatedly asked the solicitors to leave but made no attempt to evict them. They refused to stop and this litigation followed.

Before the opening of court on the morning the plaintiffs' petition for the temporary restraining order was noticed for hearing, the defendants filed an unfair labor practice charge with the National Labor Relations Board (NLRB). The complaint asserted that the Venture store was impeding the union's communication with its employees, was enforcing an unlawfully broad no-solicitation rule, and that its supervisors and agents had interfered with the distribution of union literature and had instructed the store employees to throw the literature away.

Section 21—3 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 21—3) forbids anyone from remaining upon the land of another after receiving notice from the owner or occupant to depart. Under the ordinance of the Village of Oak Lawn a person commits an unlawful trespass to private property if he fails to leave after being requested to do so by the owner or occupant. (Ordinances, Village of Oak Lawn, 1973, §§ 14—43, 14—44(c).) On the other hand, labor representatives promoting union goals are given a special status by the NLRA. The Federal Government has put a protective arm around labor representatives and they have, in certain limited circumstances, significant privileges. The immediate question to be answered is whether under the facts of this case, the antitrespass laws and the company antisolicitation rule, which would in most instances give the property owner the right to eject unwanted persons, applied with the same force and effect to the union personnel.

Section 7 of the NLRA states:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection * * *."

Section 8(a) of the Act provides:

"It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7 * * *."

In deciding whether the laws of Illinois and Oak Lawn against trespass to private property could bar recruiting by union representatives on the Venture premises, the dominant consideration is the preemptive nature of the Federal labor laws. The NLRA confers primary jurisdiction over the specially protected and prohibitive practices upon the NLRB and empowers it to investigate these practices and to interpret and enforce the NLRA. (*Garner v. Teamsters Local 776* (1953), 346 U.S. 485.) If the disputed labor activity is or may arguably be, subject to either section 7 or section 8, the initial determination of the applicability of these sections to the disputed activity must be made by the NLRB. (*San Diego Building Trades Council v. Garmon* (1959), 359 U.S. 236.) Because of this preemption it has been held that a State court may not assume jurisdiction over a labor dispute except in cases where violence occurs and public safety or the use of public streets is threatened, where circumstances give rise to the necessary exercise by the State of its police power, where it clearly appears that the board may not be able to act in time to prevent substantial and irreparable injury to a party enmeshed in a labor dispute, in instances of injurious conduct which the board is without express power to prevent or unless the board decides that a matter is not within its jurisdiction or declines to exercise its power after its jurisdiction has been invoked. *Gust G. Larson & Sons, Inc. v. Radio & Television Broadcast Engineers Local 1220* (1965), 66 Ill.App.2d 146, 213 N.E.2d 100.

Of the exceptions enumerated in *Larson* to the general prohibition against State jurisdiction, one might have pertinency to the present case: "where circumstances give rise to the necessary exercise by the State of its police power." The plaintiffs contend that they also come within an exception noted in *Garmon*: a State retains the power to control certain labor activities if the regulated conduct touches interests "so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, we could not infer that Congress had deprived the States of the power to act." (359 U.S. 236, 244.) The preemption criteria noted in *Garmon* were extensively discussed and ex-

pressly reaffirmed in *Motor Coach Employees Union v. Lockridge* (1971), 403 U.S. 274.

It is the plaintiffs' contention that the right to prevent trespassing upon private property is deeply rooted in local feeling, and that violations of this right by the union organizers could have lead to violence and hence justified the use by the State of its police power. In support of this contention the plaintiffs cite *People v. Goduto* (1961), 21 Ill.2d 605, 174 N.E.2d 385, *cert. denied* (1961), 368 U.S. 927, where the defendants' conviction for trespassing on private property for the purpose of distributing union literature was upheld. In *Goduto*, union representatives entered the parking lot of a retail store and distributed leaflets and questionnaires to store employees. The superintendent of the store informed them that the company did not permit soliciting on its property and asked them to leave. After three requests and as many refusals, he called the police. The men were arrested for criminal trespass and fined. On appeal they contended that the State court had no jurisdiction to try them for trespass because the NLRA had divested the State of the power to interfere with labor activity. The reviewing court held that State jurisdiction prevails where a labor activity involves violence or incitement to violence; that the refusal of the representatives to depart after being asked repeatedly to do so could have led—if the police had not responded—to ejection and violence; and that this imminent threat of violence was enough to enable the property owner to secure the protection of the criminal trespass statute.

The *Goduto* court said that if the employer could not avail himself of this statute he would have to resort to self-help, for he could not obtain preventive relief under the NLRA; that the maintenance of domestic peace and the absence of any preventive relief for the protection of his property rights is of sufficient importance to give State courts jurisdiction to enforce the criminal trespass statute. The court recognized that solicitation by nonemployee union organizers on company property is an activity protected by section 7 of the NLRA and that interference with this activity is prohibited by section 8. However, the court observed that after learning that the company did not want them on its property, the union organizers could have applied to the NLRB for a determination of their right to be there. The court concluded:

> "Congress has given union organizers the right to go on company property under certain circumstances and has provided a procedure for determining and enforcing this right. The union has failed to follow the procedure that Congress has provided. We are unwilling to hold that the State courts are divested of jurisdiction,

not because Congress has preempted the area, but because of the course the union organizers have followed."

It is that course that distinguishes *Goduto* from the present case. There, the union organizers made no attempt to seek the intervention of the NLRB to protect their representational efforts; here, the organizers invoked the jurisdiction of that forum.

Apart from this distinction, which we regard as conclusive, *Goduto* and the present case are alike in several respects. For example, there was no showing in either case that the organizers could not solicit union membership by store employees in places other than on the company's premises. Such a showing by labor representatives has an important bearing on the question of State jurisdiction. The *Goduto* court noted the significance of this in discussing a case that is also pertinent to the one at bar, *NLRB v. Babcock & Wilcox Co.* (1956), 351 U.S. 105. In *Babcock*, the court considered three cases where employers refused to permit distribution of union literature by nonemployee union organizers on company-owned parking lots. The court said that an employer may validly post his property against nonemployees' distribution of such literature if reasonable efforts by the union through other available channels of communication would enable it to reach the employees with its message. The court stated that the property interest of the employer was superior to the interest of the union in having a convenient means of communication with employees. However, the court also stated that property rights must yield to labor organizational activities if alternative channels of communication were not available to union representatives. The *Babcock* court emphasized, and this is its chief pertinency, that the initial determination of this question and other arguable disputes rests with the NLRB and not the States. The *Goduto* court acknowledged this further restriction on State jurisdiction: "[T]he determination of whether there are no other reasonable alternative channels of communication with employees or the no-solicitation rule is being unfairly applied is committed primarily to the National Labor Relations Board [citation] and we have no jurisdiction to determine such questions." (21 Ill.2d 605, 612-13.) So too in this case. If the NLRB should determine that the union had alternative means of communicating with Venture's employees, or should it reject the union's charge of an unfair labor practice for other reasons, its determination would have no bearing on the question of whether the State court had jurisdiction on the date its judgment was entered.

In this case, as in *Goduto*, there was no molestation of the company's employees and no interference with its customers. In contrast, the cases

involving threats of violence in which the Supreme Court has found no preemption differ wholly from this case in the nature, massiveness and imminence of the threats there presented. See, *e.g., Automobile Workers Union v. Russell* (1958), 356 U.S. 634 (mass picketing and threats of harm to body and property of nonstriking employees); *Workers Union v. Wisconsin Employment Relations Board* (1956), 351 U.S. 266 (mass picketing resulting in obstruction to plant entrance and exit, interfering with use of public roads and threats of physical injury to nonstriking employees and their families); *United Construction Workers v. Laburnum Construction Corp.* (1954), 347 U.S. 656 (threats of violence to company managers and employees forcing employer to abandon all construction projects in area). See also *Youngdahl v. Rainfair, Inc.* (1957), 355 U.S. 131; *Electrical Workers Local 1111 v. Wisconsin Employment Relations Board* (1942), 315 U.S. 740.

A candid assessment of *Central Hardware Co. v. NLRB* (1972), 407 U.S. 539, reinforces the conclusion that the dispute between Venture and the union organizers was arguably subject to sections 7 and 8(a)(1) of the NLRA. Central owned and operated two retail hardware stores. Each store was housed in a large building containing no other establishment and was surrounded on three sides by parking facilities owned by Central and maintained solely for the use of the company's customers and employees. A week before Central opened for business the Retail Clerks Union began an organizational campaign at both stores. This campaign consisted primarily of solicitation by nonemployee union organizers on Central's parking lots. Central had a rule against all solicitation. The company sought to enforce this rule by having an organizer arrested after he refused to leave one of the parking lots after being requested to do so. Soon thereafter, the union filed a charge with the NLRB alleging that Central's enforcement of its no-solicitation rule constituted an unfair labor practice under section 8(a)(1) of the NLRA. The Supreme Court concluded that whether enforcement of Central's no-solicitation rule violated the Act was to be determined by the NLRB and remanded the case to the Court of Appeals to determine whether there was substantial evidence on the record to support the board's finding that Central's enforcement of its rule violated section 8(a)(1). Although there are some factual differences between *Central Hardware* and the case at bar, they are so slight that it would be unreasonable to argue that the board in *Central Hardware* had jurisdiction to hear the union's unfair labor practice charge but that here it has none.

If the NLRB has jurisdiction it has, under the *Garmon* doctrine, exclusive jurisdiction. The fact that a state or local antitrespass law is also applicable cannot negate the National policy of conferring on the NLRB

the authority to balance in the first instance an employer's possessory and proprietary interests with a labor union's organizational rights. Federal courts at all levels have recognized the broad inroads made by the NLRA upon property rights historically enforceable under State trespass laws. For example, in *NLRB v. S&H Grossinger's, Inc.*, 372 F.2d 26 (2nd Cir. 1967), the court allowed enforcement of a board order permitting nonemployee union organizers to solicit employees residing on the premises of their employer's hotel. Similarly, in *NLRB v. Lake Superior Lumber Corp.*, 167 F.2d 147 (6th Cir. 1948), it was ruled that nonemployee union members had a right to enter and solicit employees at a lumber camp.

The concentration of power in the NLRB when property rights of employers are pitted against the right of workers to organize so that they can bargain collectively, underscores the universal judicial conviction that Congress intended that the administration of National labor policy be entrusted to a central Federal agency. (See *Motor Coach Employees Union v. Lockridge; San Diego Building Trades Council v. Garmon.*) This conviction was pithily expressed in *Marine Engineers Beneficial Associations v. Interlake Steamship Co.* (1962), 370 U.S. 173, 185: "While the Board's decision is not the last word, it must assuredly be the first."

■■ We hold that prohibiting the solicitation in this case was arguably—despite the antitrespass laws and Venture's no-solicitation rule—an unfair labor practice and as such it was within the jurisdiction of the National Labor Relations Board rather than the State court. By invoking the jurisdiction of the board the defendants effectively removed the controversy from the jurisdiction of the circuit court and the latter erred in issuing the preliminary injunction.

The injunction must be dissolved and the motion to dismiss granted; therefore, the case is remanded for proceedings consistent with this opinion.

Reversed and remanded.

McNAMARA and MEJDA, JJ., concur.