Thomas E. Joyce, Leo Palewich, Jr., and Everlast Development Corporation, a Corporation, Plaintiffs-Appellants, v. Year Investments, Inc., a Corporation, Land Title Company, a Corporation, and Lawyers Title Insurance Corporation, a Corporation, Defendants-Appellees.

Gen. No. 49,032.

First District, First Division.
January 21, 1964.

Thomas E. Joyce and Burton Sherre, of Chicago (Milton M. Hermann, of counsel), for appellants.

McDermott, Will & Emery, of Chicago (Hamilton Smith, of counsel), for appellee, Lawyers Title Insurance Corporation.

MR. JUSTICE BURMAN delivered the opinion of the court.

This is an appeal from an order dismissing with prejudice, the amended complaint as to defendants, Land Title Company, a corporation and Lawyers Title Insurance Corporation. This case is here on the pleadings, no evidence having been heard in the court below. On plaintiffs' motion the court found that there was no just reason for delaying enforcement of this order or appeal therefrom. No brief was filed on behalf of Land Title Company.

Plaintiffs, Thomas E. Joyce, Leo Palewich, Jr. and Everlast Development Corporation, filed a complaint in chancery on March 26, 1962, in which they prayed that an executed settlement agreement entered into between the parties on June 30, 1961, be declared null and void and that plaintiffs recover substantial damages from all of the defendants. All three defendants filed written motions to dismiss the complaint and the motions to dismiss were sustained and by leave of court the plaintiffs filed an amended complaint. After a hearing the motions to dismiss the amended complaint were sustained and it was dismissed as to the two defendants mentioned above and also dismissed as to defendant Year Investments, Inc. with the exception of paragraph fourteen of the complaint and no appeal was taken as to the ruling concerning the latter defendant.

The case grows out of an agreement by Joyce on January 2, 1960, to purchase from Year certain real estate known as Blackberry Heights Subdivision, which then consisted of 54 subdivided lots and adjoining acreage, all located in Kane County, Illinois. Thereafter Joyce and Palewich formed the Everlast Development Corporation for the purpose of developing this subdivision. Some time after the contract was entered into Land Title and Lawyers Title assumed all negotiations for Year and they guaranteed plaintiffs that they owned and controlled the sub-

division except for certain interests of one Smith and Associated Funding Company.

The parties entered into a subsequent written settlement agreement of all disputes concerning their contract on June 30, 1961. In this settlement plaintiffs were given certain credits and agreed to pay a specified balance due Year on the contract which payment was to be paid partly in cash and partly in the conveyance of certain real estate to Year and to deliver a note of one Edward Engel in the amount of $1,010.74 which was guaranteed by Joyce and Palewich. Upon full compliance of the above and other enumerated acts by the plaintiffs Year would assign and quitclaim certain of the lots described in the purchase contract. The plaintiffs released and discharged the defendants in this agreement from "any and all claims and demands which they have or may hereafter claim to have based on any matter or thing whatsoever. . ."

The amended complaint, summarized briefly, charges that plaintiffs, after performing work, investing time and money, discovered that defendants only controlled twenty of the fifty-four subdivided lots they had agreed to sell, and controlled none of the adjoining acreage of Blackberry Heights; that as a result of this misrepresentation by defendants they were forced to enter into an agreement with the owners of the thirty-four lots and the adjoining acreage at great additional expense to them; that defendants withheld titles to properties which plaintiffs were entitled to; that defendants mishandled and manipulated lawsuits involving properties in which plaintiffs had an interest without plaintiffs knowledge; that defendants refused to provide title insurance on the subdivision lots in question; that they refused to transfer commitments for mortgage loans on certain lots in breach of their promises; that they gave plaintiffs a letter of direction to a trustee under a land trust directing

the trustee to execute mortgages and notes on certain lots and then wrongfully countermanded its action and also wrongfully countermanding its direction to a trustee to issue its deed conveying certain lots to plaintiffs; that plaintiffs were in immediate need essential to their survival, of said executed mortgages and notes and trustees deed in order to obtain the release of funds due plaintiffs from certain loan associations, said funds being necessary to satisfy certain mechanic's liens which had been filed against the subdivision and to pay subcontractors, to meet obligations on the first and second mortgages and to prevent threatened foreclosures and work stoppage; that defendants knowing these conditions confronting plaintiffs and their dire need of funds demanded that plaintiffs execute a settlement agreement before they would agree to release said mortgage, notes and trust deed or other things required of them; that they had no other recourse but to sign the settlement agreement rather than have their property foreclosed and a complete work stoppage on homes they were building; that these wrongful acts on the part of defendants constituted coercion and external pressure which deprived plaintiffs from their free agency in respect of the execution and delivery of said agreement of June 30, 1961, and therefore the latter agreement should become null and void and plaintiffs recover the sum of $210,642.59 as damages.

Plaintiffs contend that these allegations make out a clear case of oppressive demands so gross as to have forced them to enter into the settlement agreement while under conditions amounting to economic duress or business coercion.

The question for us is whether the trial court erred in dismissing the complaint on the ground that the claim of business duress was dissolved by the plaintiffs' failure to take proper legal action to restrain

313

and resolve the controversies and instead their decision to enter into a settlement agreement.

■ The motion to dismiss, of course, admitted the well-pleaded allegations in the amended complaint which we have summarized above. Taking all of the plaintiffs' allegations as true we nevertheless hold as did the Chancellor that the previously enumerated legation of evils visited upon the plaintiffs, "could have been the subject of an equity suit by the plaintiffs against the defendants, long prior to the date of the settlement agreement of June 30, 1961."

■ "[T]he real and ultimate fact to be determined in every case is whether or not the party really had a choice—whether he had his freedom of exercising his will." 5 Williston, Contracts (Rev Ed 1937) § 1603. The legal conception of economic or compulsory duress is in forcing a person to act against his own will. It does not exist when the person upon whom it has been so charged had an option or choice as to whether he will do the thing or perform the act said to have been done under duress. We think the Chancellor correctly held that the plaintiff had a choice of seeking relief from the courts.

In the case of Illinois Merchants Trust Co. v. Harvey, 335 Ill 284, 167 NE 69 the court discussed the circumstances under which it would invalidate a payment of money or a settlement agreement as being motivated by duress or compulsion. In that case the lessees made a payment to the lessor which they contended was based on an unjustified and arbitrary claim. Their excuse for paying the sum of money was that they could not afford to litigate the question in any suit involving the possible forfeiture of their lease. They argued that the payment by them was made under compulsion or duress. The chief contention of the lessor was that the lessees could have maintained a

bill in equity to prevent the threatened forfeiture. The Supreme Court held that the threatened forfeiture by lessor was cognizable in equity and that the lessees had adequate time to secure such aid. The payment was held to be voluntary and not under compulsion.

In the case at bar as in the Harvey case the plaintiffs choose to enter into an agreement with the defendants in which the defendants' allegedly arbitrary demands were met; but here the plaintiffs not only entered into the agreement, but accepted the benefits thereof. They argue that the only course open to them was to enter into the settlement agreement and litigate later. We do not agree.* Nor are we impressed with plaintiffs' argument that interlocutory relief was not obtainable in the Chancery Courts. We consider rather that the voluntary acceptance of benefits under the facts in this case is a bar and complete extinction of former claims. The compromise and settlement of disputed claims are encouraged and favored by the courts. 11 ILP § 2 Compromise and Settlement. Accordingly where there is no fraud such agreements are upheld as valid contracts for otherwise no one could rely upon any settlement agreement as final. It is worthy of note that plaintiffs do not charge that the defendants did not fully and completely carry out their settlement agreement.

Furthermore the plaintiffs do not claim that the settlement agreement was procured by false and fraudulent representations or entered into by them through

---

* We are of the opinion that the allegations of the amended complaint pertaining to misrepresentation by defendants of the number of lots they controlled, with regard to certain lawsuits, the refusal to issue title insurance, the refusal to direct the execution of mortgages and deeds when the plaintiffs were in serious financial difficulties which threatened their business venture could all have been the subjects of suits timely brought.

mistake which prevented them from resorting to the courts for relief. The cases relied on by plaintiffs involve the return of monies alleged to have been extorted by undue practices, where the only practical course for the one extorted was to pay the money and litigate later. In the case at bar the plaintiffs entered into the settlement agreement which they now seek to upset, only after eighteen months of disputes and negotiations. None of the cases which plaintiffs cite involves a situation where the decision to settle was based on "negotiation" rather than "extortion," and indeed there are none to be found. The other questions raised we do not deem of sufficient importance to make comment.

For the reasons indicated we have reached the conclusion that the order of the Superior Court dismissing the amended complaint is correct and it is therefore affirmed.

Order affirmed.

ENGLISH, P. J. and MURPHY, J., concur.