Lloyd LaBEACH, Plaintiff,

v.

BEATRICE FOODS CO. and Godfrey K. J. Amachree, Defendants.

No. 78 Civ. 1314 (HFW).

United States District Court, S. D. New York.

Nov. 8, 1978.

Ashley R. Andrews, P. C., New York City, for LaBeach by W. Harvey Mayer, New York City, of counsel.

Finley, Kumble, Wagner, Heine & Underberg, New York City, for Beatrice by Alan M. Gelb, James E. Merriman, New York City, of counsel.

1. Dep. of Lloyd LaBeach, May 15, 1978, at 18, 57. At his deposition, LaBeach testified that he was uncertain of the exact amount of Express stock he owned at that time. He indicated, however, that he owned at least 79 per cent of the stock and possibly even 100 per cent. *Id.* at 57–58.

## OPINION

WERKER, District Judge.

This diversity action was brought by Lloyd LaBeach against his former employer, Beatrice Foods Co. ("Beatrice"), and Godfrey K. J. Amachree, a Nigerian attorney. The complaint alleges that the defendants wrongfully coerced LaBeach into giving up his controlling interest in Express Diary Ltd. ("Express"), a Nigerian company. This matter is presently before the Court on Beatrice's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

### 1.

The undisputed facts are as follows. Prior to September 1976, LaBeach was the principal owner and managing director of Express. As of September 6, 1976, LaBeach owned 60 per cent of the Express stock and as recently as May 1978 LaBeach was the owner of at least 79 per cent.[1]

In September of 1976, LaBeach entered into an employment contract with Beatrice whereby he was appointed managing director of Nigerian operations. The contract, which took the form of a four-page letter agreement, contained a clause wherein LaBeach warranted that he had divested himself of all of his interests in Express.[2] The contract also provided that it was to be "construed and governed by the laws of the State of Illinois, regardless of the fact that the performance of [LaBeach's] duties [was to] take place principally in Nigeria." Beatrice exh. D, at 3–4, affid. of James L. Dutt, sworn to Apr. 5, 1978. The contract was terminable at will by either party, and was signed by LaBeach on September 7, 1976.

In March 1977, LaBeach's employment with Beatrice was terminated.

2. In addition, LaBeach was also obligated under the clause to divest himself of all other interests he may have had in any other Nigerian business. Beatrice exh. D, at 3, affid. of James L. Dutt, sworn to Apr. 5, 1978.

On May 7, 1977, LaBeach met in Geneva with James L. Dutt, the president of Beatrice, to settle various claims that LaBeach had against Beatrice. At this meeting, LaBeach presented claims for unpaid salary and commissions due and owing and for reimbursement for various expenses.[3] After making certain adjustments, LaBeach and Dutt agreed on a sum of $122,210 to cover all of these claims. A check in the sum of $121,010 was thereupon tendered to LaBeach, $1,200 having been deducted from the agreed sum to repay an advance that had been made to LaBeach by one Anthony Luiso.[4]

Upon receiving the check, LaBeach executed a release in Beatrice's favor. On the second page of the release, LaBeach acknowledged in his own handwriting that he had received the check for $121,010 "in full settlement."

On March 23, 1978, LaBeach commenced the instant action seeking $1,000,000 in damages.

## 2.

Beatrice bases its summary judgment motion on LaBeach's release, which it contends extends to and bars LaBeach's claims asserted herein. LaBeach opposes summary judgment on three grounds: (1) the validity of the release is to be resolved under Nigerian law and expert testimony is therefore required, (2) an issue of fact exists as to whether the release was executed as a result of duress, and (3) an issue of fact exists as to the scope of the release, which LaBeach contends turns on the intent of the parties.

## 3.

### A. *Choice of Law*

■ A federal court presented with a conflict of laws issue in a diversity case must resolve that issue by applying the conflicts law of the state in which it sits. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Hence, New York law applies to the conflicts question raised herein.

■ The relevant contacts are spread out over three countries and three states. Beatrice is a Delaware corporation with its principal place of business in Illinois, while LaBeach is a resident of New York. The contract in question was executed in London, Dep. of Lloyd LaBeach, May 15, 1978, at 13, and provides that it is to be construed and governed by Illinois law. LaBeach's duties under the contract were to be performed principally in Nigeria.

LaBeach argues that Nigerian law applies to the issues raised herein on the grounds that Nigeria is the place with the most significant contacts. Beatrice, on the other hand, argues that the choice of law provision contained in the contract controls, and that Illinois law should therefore govern.

A number of New York cases have held that where the parties to a contract have included a choice of law provision, effect is to be given to their choice as long as there is a reasonable relation between the transaction and the jurisdiction whose law was chosen. *E. g., A. S. Rampell, Inc. v. Hyster Co.*, 3 N.Y.2d 369, 165 N.Y.S.2d 475, 144 N.E.2d 371 (1957); *Levey v. Saphier*, 83 Misc.2d 146, 370 N.Y.S.2d 808 (Spec. T. Nassau Co.1975); *Sears, Roebuck & Co. v. Enco Associates*, 83 Misc.2d 552, 370 N.Y.S.2d 338 (Sup.Ct. Westchester Co.1975), *aff'd*, 54 A.D.2d 13, 385 N.Y.S.2d 613 (1st Dep't 1976), *modified*, 43 N.Y.2d 389, 401 N.Y.S.2d 767, 372 N.E.2d 555 (1977). The New York Court of Appeals has suggested, however, that this doctrine need not be strictly followed. Instead, it has held that while the parties' choice of law is to be given considerable weight, the law of the jurisdiction with the "most significant contacts" is to be

---

**3.** LaBeach apparently also presented a claim for the purchase price of Express which he alleged was due and owing from Beatrice. This claim was apparently not resolved. *See* note 9 *infra*.

**4.** Anthony Luiso was formerly Assistant to the President of the International Food Division of Beatrice. Affid. of James L. Dutt, sworn to Apr. 5, 1978, at ¶ 14.

applied. *Haag v. Barnes*, 9 N.Y.2d 554, 216 N.Y.S.2d 65, 175 N.E.2d 441 (1961). *See also Southern International Sales Co. v. Potter & Brumfield Division of AMF Inc.*, 410 F.Supp. 1339, 1341 (S.D.N.Y.1976); *Joy v. Heidrick & Struggles, Inc.*, 93 Misc.2d 818, 403 N.Y.S.2d 613 (Civ.Ct.N.Y.Co.1977).

According the parties' choice of law the considerable weight it warrants, *see* U.C.C. § 1–105; Restatement (Second) of Conflict of Laws § 187 (1971), I find that Illinois is the jurisdiction with the most significant contacts in the instant case. The only Nigerian contact is the place of performance of the contract; the parties to the contract are not Nigerian residents, nor was the contract executed in Nigeria. On the other hand, Beatrice has its principal place of business in Illinois, and both parties clearly intended and expected Illinois law to apply. Hence, the rights and duties of the parties to the contract at issue are to be governed by the law of Illinois.

■ Because the questions surrounding the release arise from LaBeach's employment with Beatrice pursuant to the employment contract discussed above, these questions fall within the choice of law clause. Consequently, the validity and scope of the release are to be determined in accordance with Illinois law.

### B. *The Economic Duress Claim*

■ LaBeach contends that the release is null and void because he was compelled to sign it under economic duress. He argues further that the duress claim has given rise to substantial questions of fact that mandate a denial of Beatrice's summary judgment motion.[5]

---

5. Beatrice's motion for summary judgment is supported by LaBeach's deposition, James Dutt's affidavit, and various other documents and exhibits. Pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, therefore, LaBeach is obligated to do more than rest on mere conclusory allegations in opposing summary judgment. Yet, LaBeach has not set forth "concrete particulars" in his opposition papers, *Dressler v. MV Sandpiper*, 331 F.2d 130, 133 (2d Cir. 1964), and has failed to provide affidavits based on personal knowledge or other specific support to show that material questions of fact exist. *Donnelly v. Guion*, 467

■ To make out an economic duress claim under Illinois law sufficient to void a contract or release,[6] a person must show that the duress left him "bereft of the quality of mind essential to the making of a contract." *Kaplan v. Kaplan*, 25 Ill.2d 181, 186, 182 N.E.2d 706, 709 (1962); *accord, Alexander v. Standard Oil Co.*, 53 Ill.App.3d 690, 699, 11 Ill.Dec. 402, 408, 368 N.E.2d 1010, 1016 (5th Dist.1977); *Gerber v. First National Bank*, 30 Ill.App.3d 776, 779, 332 N.E.2d 615, 618 (1st Dist.1975). The key question is whether the party claiming duress had a choice:

> The legal conception of economic or compulsory duress is . . . forcing a person to act against his own will. It does not exist when the person upon whom it has been so charged had an option or choice as to whether he will do the thing or perform the act said to have been done under duress.

*Joyce v. Year Investments, Inc.*, 45 Ill. App.2d 310, 314, 196 N.E.2d 24, 26 (1st Dist.1964). In order for acts or threats to constitute duress, they must be wrongful— at least in a moral sense. *Kaplan v. Kaplan, supra*, 25 Ill.2d at 186, 182 N.E.2d at 709. While the validity of a duress claim is an issue of fact to be determined in light of all the circumstances, *Alexander v. Standard Oil Co., supra*; *Staren & Co. v. Shapiro*, 3 Ill.App.3d 417, 420, 279 N.E.2d 470, 472 (1st Dist.1972), the Illinois courts have not hesitated to act summarily without a trial where the material facts were not in dispute. *See, e. g., Kaplan v. Kaplan, supra*; *Joyce v. Year Investments, Inc., supra*.

---

F.2d 290, 293 (2d Cir. 1972). The Court notes that these shortcomings alone constitute sufficient grounds for entering summary judgment against LaBeach. Fed.R.Civ.P. 56(e).

6. In their motion papers the attorneys for Beatrice state that "Illinois has no case in point on economic duress so the matter is to be resolved as a matter of general common law . . . ." Beatrice's Reply Memorandum of Law in Support of Summary Judgment, at 4. It is readily apparent that counsel did not expend any energy researching Illinois law, for there certainly is ample Illinois case law on point.

■ Resolving all doubts in LaBeach's favor, I find as a matter of law that there was no duress in the instant action.[7]

LaBeach's testimony taken in his deposition of May 15, 1978 clearly demonstrates that he was well prepared for his meeting with James Dutt in May of 1977 in Geneva. Prior to that meeting, LaBeach had spoken with Dutt of the possibility of having a meeting in Geneva "to get everything straightened out." Dep. of Lloyd LaBeach, May 15, 1978, at 63–64. LaBeach went to the May 1977 meeting with data and documentation in support of his demands. *Id.* at 64. More importantly, LaBeach consulted with his attorney before he went to the meeting, *id.*, and LaBeach accepted the $121,010 payment against his lawyer's advice. *Id.* at 90.

■ LaBeach's testimony fails to show any actual threat or wrongful act on Beatrice's part. *Id.* at 78–81. The crux of LaBeach's duress claim is an "emotional fear" of "the power of Beatrice Foods." *Id.* at 78, 80:

Q Your lawyer has told us that you signed this General Release as a result of duress. Tell us precisely please, in your own words what did that duress consist of?

A The power of the company. In other words, if I didn't sign that particular document—

Q They would not pay you; is that right?

A Yes.

Q That was the duress? It was an understanding that you had in your head; is that right?

MR. MAYER: I am going to object.

A Under the pressure of banks and you are dealing with a large international corporation, I am—

Q Did Mr. Dutt say any words to you which induced fear in you of some kind?

A Not fear physically.

Q Fear emotionally?

A I would say that, yes.

Q What were the words that he uttered to you?

A He said to me I better sign and get this over with.

Q Did he say what would happen if you did not?

A No, I didn't say that to him.

Q Did he tell you what would happen if you did not sign?

A He doesn't have to say it. He didn't have to say it because I could fear it.

*Id.* at 79–80. This testimony alleges that the purported duress was imposed in two ways: through Beatrice's unwillingness to pay LaBeach any sums unless the release was signed, and through the presence of Beatrice's vast economic power. Neither of these circumstances, even assuming they existed, can be construed in any way to constitute economic duress under Illinois law.

■ The fact that Beatrice required LaBeach to sign a release before it would pay LaBeach for any of his claims certainly was not illegal or wrongful in any moral way. Beatrice could not have been expected to tender a substantial sum of money for disputed claims without some assurance that it would be protected from additional future liability. *See Joyce v. Year Investments, Inc., supra* (fact that an employer required its employee to sign a promissory note before it would issue a written release did not constitute duress sufficient to set aside employee's obligations under the note).

■ LaBeach's claim that he was coerced into signing the general release because of Beatrice's vast economic power is likewise unconvincing. The mere presence of economic power, without some wrongful use of that power, does not in and of itself constitute economic duress even though great disparity in the size of the parties exists. *See Undersea Engineering & Construction Co. v. International Telephone &*

---

7. In holding as it does, the Court is mindful of the fact that its function, in determining whether to grant summary judgment, is not to try issues of fact but to determine whether issues of fact exist. *American Mfrs. Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967).

*Telegraph Corp.,* 429 F.2d 543, 550 (9th Cir. 1970).

A third possible ground for La-Beach's duress claim is his assertion that his bank was pressuring him for repayment of a $100,000 personal loan. Dep. of Lloyd LaBeach, May 15, 1978, at 59. Even assuming Beatrice had knowledge of this loan and the pressure being asserted on LaBeach for repayment, the Court finds that there was no duress. Beatrice cannot be held responsible for economic pressure put on LaBeach by a third party. In *Joyce v. Year Investments, supra,* the court rejected a similar claim of a party seeking to set aside a settlement on the grounds that the defendants knew that pressure had been put on him by third parties.

In sum, LaBeach did not execute the release until after he had deliberated and fully prepared for the Geneva settlement meeting. Although he did not have an attorney present when he signed the release, he did in fact consult with his lawyer prior to attending the meeting. LaBeach voluntarily entered into the settlement agreement and accepted the benefits thereof. *See Joyce v. Year Investments, Inc., supra,* 45 Ill.App.2d at 315, 196 N.E.2d at 27 ("[T]he voluntary acceptance of benefits . . . is a bar and complete extinction of former claims. The compromise and settlement of disputed claims are encouraged and favored by the courts. . . . Accordingly where there is no fraud such agreements are upheld as valid contracts for otherwise no one could rely upon any settlement agreement as final.") (citation omitted). Aside from unsupported conclusory allegations, LaBeach has failed to make any showing that Beatrice engaged in any wrongful acts that could be construed as constituting duress. Hence, I find as a matter of law that LaBeach is bound by the release, for he executed it with the quality

of mind essential to the making of a contract.

### C. *Scope of the Release*

LaBeach's final ground for opposing summary judgment is his contention that a material question of fact exists as to the scope of the release. More particularly, he alleges that the question of the intent of the parties is raised because the "release contains words of general release followed by words of specific release." LaBeach's Memorandum of Law in Opposition to the Motion, at 3.

The relevant language of the release is as follows:

> . . . LaBeach . . . for and in consideration of . . . $122,210 . . . by Beatrice . . ., the receipt and sufficiency of which is hereby acknowledged, has remised, released, and forever discharged and, by these presents does remise, release and forever discharge [Beatrice] . . . of and from any and all claims, demands or action whatever, in law or in equity, arising out of or by virtue of any fact or circumstance to the date hereof which he now has against [Beatrice] or ever had or which he . . shall or may have, for, upon, or by reason of any matter, cause, or things whatsoever, on or at any time prior to the date of these presents, including, without limiting the generality of the foregoing, all claims, demands or actions arising from employment by or representation of [Beatrice] and all claims for moneys or efforts expended on behalf or for the benefit of [Beatrice].

Beatrice exh. C, affid. of James L. Dutt, sworn to Apr. 5, 1978.

Notwithstanding LaBeach's contentions to the contrary, the Court finds that there are no questions of material fact with respect to the scope of the release. At the very least,[8] the release encompasses "all

---

**8.** LaBeach is correct in asserting that an issue of construction is posed when a general release refers to specific claims. Under Illinois law, such a release releases only those claims specifically mentioned. *Robinson v. United States,*

408 F.Supp. 132, 136–37 (N.D.Ill.1976); *Kerr v. Schrempp,* 325 Ill.App. 614, 60 N.E.2d 636 (3d Dist.1945). In the instant case, because I find that the claims asserted in the complaint fall within the language that LaBeach contends

claims, demands or actions arising from [the] employment" of LaBeach by Beatrice. Since LaBeach's claims asserted herein arise from his employment with Beatrice, they fall within the scope of the release.

The thrust of LaBeach's complaint is his charge that Beatrice, along with defendant Amachree, coerced him into giving up his control of Express.[9] Complaint, at ¶¶ 9, 11. This charge flows from LaBeach's obligation under the employment contract to divest himself of all interests in Express or any other Nigerian business, see note 2 supra, and is thus barred by the release. Moreover, LaBeach has undermined this claim himself by testifying in his deposition that he had not lost control of Express. In fact, LaBeach's interest in Express increased from the time he commenced working with Beatrice, when he owned some 60 per cent of the company, to the time of his deposition, when he testified that he owned at least 79 per cent. Dep. of Lloyd La-Beach, May 15, 1978, at 57–58. Any claim, therefore, that Beatrice coerced him into giving up control of Express must fail.

LaBeach's complaint can also be read to have asserted a claim of wrongful discharge from employment. Complaint, at ¶ 11. Such a claim, however, clearly arises from his employment and is thus barred by the release. In addition, the contract was terminable at will and, even so, Beatrice had good cause to discharge LaBeach since he had breached the terms of the employment contract by not divesting himself of his interest in Express.

## CONCLUSION

In accordance with the above, Beatrice's motion for summary judgment is granted. LaBeach's complaint is dismissed as to Beatrice. There being no just reason for delay, I hereby direct judgment to be entered for Beatrice pursuant to Rule 54(b). Beatrice is to submit a judgment on notice within 15 days after entry of this order.

SO ORDERED.

constitutes a specific release, I do not reach the question of whether the purported specific language renders what is earmarked as a general release into a specific one. It should be noted in passing, however, that the language at issue is preceded by the phrase: "without limiting the generality of the foregoing."

9. Although LaBeach's action herein was brought to recover damages resulting from Beatrice's alleged attempts to force LaBeach to give up control of Express, it would appear that the real reason for LaBeach's discontent is Beatrice's failure to actually purchase Express. LaBeach contends that Beatrice made a verbal commitment to purchase Express for some 300,000 naira (Nigerian currency). Dep. of Lloyd LaBeach, May 15, 1978, at 43; complaint, at ¶ 7. See also LaBeach exh. A, affid. of W. Harvey Mayer, sworn to July 5, 1978 (unexecuted agreement, purportedly prepared by Beatrice, for the purchase and sale of Ex-

press). LaBeach apparently went to the May 1977 meeting with James Dutt expecting to discuss the purchase price of Express as well as his claims for unpaid salary and expenses. Dep. of Lloyd LaBeach, May 15, 1978, at 74–75. According to LaBeach, Dutt told him at the meeting that "he was not at the time connected with the acquiring of Express." Id. at 83. It would appear, then, that LaBeach's dissatisfaction arises from what he felt was a breach of a commitment on Beatrice's part to buy out his interest in Express. Nowhere, however, has LaBeach pleaded such a claim. In fact, his complaint alleges the very opposite—that he was damaged because Beatrice caused him to give up his interest in Express. Because the issue has not been pleaded, the Court makes no judgment on the viability of any claim that LaBeach may have for a breach of a contract for the sale and purchase of Express.