*In re* ESTATE OF EUGENE L. LEITER, Deceased.—(JOHN C. PARKHURST *et al.*, Plaintiffs-Appellees, *v.* THOMAS LEITER *et al.*, Ex'rs of the Estate of Eugene L. Leiter, Defendants-Appellants.)

Third District  No. 80-14

Opinion filed August 8, 1980.—Rehearing denied September 9, 1980.

John G. Sahn, of Leiter, Leiter & Sahn, of Peoria, for appellants.

John C. Parkhurst and Raymond J. Fraser, both of Peoria, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from the granting of a motion for summary judgment by the Circuit Court of Peoria County which allowed the claims of Parkhurst and Fraser which had been filed against the estate of Eugene L. Leiter, deceased.

The decedent Leiter, Parkhurst, Fraser and two other lawyers were associated as partners in the practice of law with offices in the city of Peoria.

In the early part of 1972 the law partners were considering the purchase of certain realty in Peoria for the purpose of constructing an office building which would contain space for their own offices as well as additional space for rental to other tenants. On or about April 27, 1972, the law partners authorized the making of an offer in the amount of $125,000 for the purchase of the realty which they desired. Negotiations were entered into between the law partners and the land owner. Several months later and prior to any agreement being reached by the parties, the property was purchased by Eugene L. Leiter, the decedent, an architect, and Thomas E. Leiter. This latter individual was associated with the law firm which was attempting to purchase the property but was not a partner. He is a son of the decedent, Eugene L. Leiter, and, along with the

Commercial National Bank of Peoria, is a co-executor of his father's estate.

The partners in the law firm were of the opinion that Eugene L. Leiter by this unrevealed and unilateral action in purchasing the property had breached a fiduciary duty owed to them. The law partners took the position that they had been damaged, and for a period of approximately 14 months negotiations ensued between the law partners and the parties who purchased the property in an effort to resolve the question of damages.

It was believed that the matter of damages had been resolved, and on July 24, 1974, an agreement was entered into between the Leiters and the partners Parkhurst and Fraser, the claimants, and another law partner, Jackson P. Newlin.

All parties to this appeal agree that the pertinent section of the agreement is section VI, which provides as follows:

> "It is recognized by the parties hereto that in order to facilitate the completion of the improvements on the real estate for the mutual advantage of all the parties hereto that Jackson P. Newlin, Raymond J. Fraser and John C. Parkhurst, have provided certain credits and advances to Eugene Leiter and Thomas Leiter which in the aggregate amount of $13,500.00 and which amount Eugene Leiter and Thomas Leiter jointly and severally promised to pay in equal shares to Jackson P. Newlin, Raymond J. Fraser, and John C. Parkhurst, on or before five years from the date of this Agreement with no interest to accrue during said time."

It is undisputed that prior to the July 24, 1974, agreement entered into by the parties extensive negotiations were entered into which for a time centered around a proposal whereby the law partners were to share in expected profit resulting from the construction of the building. This expected profit was to be derived from the law partners being allowed to purchase the sixth floor of the building (for office space) at a discounted cost. This offer submitted to the law partners contained no mention of risk-taking, no plan for final accounting, and was in no way to be connected to actual profits. This proposal was not accepted by the law partners and negotiations continued.

On April 6, 1974, a memo from the Leiters provided the impetus for a settlement of the difficulties between the parties. This memo signified the acceptance of "a liquidation of profits" theory requested by the law partners by crediting them with a fixed sum to be effectuated by giving them a higher percentage of beneficial interests in a land trust which would own the sixth floor of the building. From this time on there was no further reference as to the sharing of profits or losses. The parties only discussed the manner of making a fixed payment and the amount.

Without going into further unnecessary details, the end result was the July 24, 1974, agreement, the pertinent provision of which is section VI, which has heretofore been set out. It is clear that this clause promised to pay each claimant a sum certain, being $4,500 on or before five years from the date of the agreement, without interest.

The co-executors in this appeal argue that the trial court erred in granting summary judgment to the claimants since the pleadings disclose genuine issues of material fact which would preclude such a judgment. Specifically the co-executors argue that the promise to pay the claimants was conditioned upon profits being realized from the building venture.

We disagree with the contention of the co-executors, for the July 24 agreement is clear and unambiguous in that it provided for the payment of a sum certain at a stated time and there is no hint or suggestion of such payment being a conditional one. Not only the final agreement but the memos, minutes and documents leading to the execution of the final agreement and the affidavits for summary judgment clearly illustrate that the "profits and losses" theory was suggested and rejected by the claimants.

■■ In determining whether there is a genuine issue of material fact the trial court should consider all pleadings, admissions, affidavits and other evidence, and if no genuine issue of material fact exists after considering these matters, a motion for summary judgment should be granted as a matter of law. This court has stated that where but a single inference can be drawn from undisputed facts, summary judgment is proper. See *Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045.

The co-executors in advancing the "profits and losses" theory attempt to assert that the July 24 agreement must fall because of lack of consideration between the parties as to the agreement. As stated, we find no merit in the "profits and losses" theory, but we nevertheless find that there was ample consideration as far as the agreement was concerned. From an examination of the records it becomes indisputably clear that a serious and legitimate dispute had arisen between the law partners. That dispute was resolved and settled by the terms of the July 24 agreement. A compromise of a disputed claim made in good faith where that claim is extinguished is sufficient consideration to support an agreement. *Dougherty v. Duckels* (1922), 303 Ill. 490, 135 N.E. 737.

■■ The co-executors lastly contend that the court erred in granting summary judgment to the claimants since the pleadings disclosed the defense of duress with respect to the agreement. It is the specific argument of the co-executors that the July 24, 1974, beneficiary agreement was entered into by the decedent because of duress.

In addressing this issue no useful purpose would be served in

reiterating the documentation of facts that established the parties were having a genuine serious legal dispute. The trial judge correctly summarized the situation when in addressing the co-executor Thomas Leiter he stated:

> "* * * these people that you were having the dispute with, Parkhurst, Fraser, were your law partners and it was their position that if they could not settle this dispute and if they were charging one partner with a breach of fiduciary relationship, if that wasn't disposed of, if that wasn't take care of, they could not continue on as partners. You cannot continue on as a partner with somebody that you feel has already breached the fiduciary relationship."

In the light of the situation so aptly described by the trial court we direct our attention to the case of *Joyce v. Year Investments, Inc.* (1964), 45 Ill. App. 2d 310, 196 N.E.2d 24. In *Joyce* the plaintiffs sought to have declared null and void a settlement agreement entered into after 18 months of negotiation on the basis that the defendants, knowing of the plaintiffs' need for funds, demanded that they execute a settlement agreement before a mortgage would be released and to perform certain other acts requested of them. The plaintiffs prayed that the agreement be set aside on the ground of duress.

The reviewing court in *Joyce* in affirming a judgment for the defendants made the following observations:

> "In the case at bar as in the Harvey case the plaintiffs choose to enter into an agreement with the defendants in which the defendants' allegedly arbitrary demands were met; but here the plaintiffs not only entered into the agreement, but accepted the benefits thereof. They argue that the only course open to them was to enter into the settlement agreement and litigate later. We do not agree.* * *
>
> * * * In the case at bar the plaintiffs entered into the settlement agreement which they now seek to upset, only after eighteen months of disputes and negotiations. None of the cases which plaintiffs cite involves a situation where the decision to settle was based on 'negotiation' rather than 'extortion,' and indeed there are none to be found." 45 Ill. App. 2d 310, 315-16, 196 N.E.2d 24, 26-27.

We deem the case of *Joyce* to be particularly pertinent to the situation in the instant case. In *Joyce* negotiations took place for a period of 18 months and in the instant case for a period of 14 months. Also, in *Joyce* the court noted that the parties claiming duress had accepted the benefits stemming from the agreement, while in the instant case Eugene Leiter, the decedent, continued his relationship with his law partners from the date of the agreement until his death.

We find little difference in the situation in *Joyce* from the situation

that existed in the instant case. We can only conclude that the defense of "duress" was a contrived one and is of no merit.

For the reasons set forth the order of the Circuit Court of Peoria County granting summary judgment to the claimants is in all respects affirmed.

Affirmed.

STENGEL and STOUDER, JJ., concur.