UNPUBLISHED ORDER
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued June 1, 2006
Decided June 26, 2006

**Before**

Hon. JOEL M. FLAUM, *Chief Judge*

Hon. DANIEL A. MANION, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 05-3983

| | |
|---|---|
| NOLAN HARDY and KENNETH ANDERSON, individually and on behalf of a class of person similarly situated, <br><br>   *Plaintiffs-Appellants*, <br><br> *v.* <br><br>CHICAGO HOUSING AUTHORITY, <br>   *Defendant-Appellee*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division <br><br>No. 04 C 5751 <br><br>John A. Nordberg, <br>*Judge*. |

**O R D E R**

In 1999, the Chicago Housing Authority ("CHA") disbanded its police force. After negotiations between the CHA and the plaintiffs' union, which represented Chicago Housing Authority Police Dispatchers, the union signed an agreement releasing the CHA from all federal claims. Nearly five years later, the plaintiffs brought suit for compensation under the Federal Worker Adjustment and Retraining Notification Act ("WARN Act"). 29 U.S.C. §§ 2101-2109. The district court accepted the defendant's affirmative defense that the settlement agreement

barred the plaintiffs' suit and granted summary judgment for the defendant.  For the following reasons, we now affirm the judgment of the district court.

## I. Background

In 1989, the Chicago Housing Authority established a police department to serve residents of its housing developments.  After ten years of operation, on October 12, 1999, the CHA announced to all employees and their unions that effective October 29, 1999, it would cease operations and all employees would be laid off.  At the time of this announcement, the eleven police dispatchers employed by the Chicago Housing Authority were represented by the Illinois Fraternal Order of Police Labor Council ("FOP").

On October 27, 1999, the FOP filed an unfair labor practice charge, alleging that the CHA refused to bargain concerning its decision to cease police department operations.  The FOP and CHA reached a settlement agreement on May 5, 2000.  This agreement required that the dispatchers release all claims "arising under any federal, state or local statute" and stated that the release was "intended to be construed broadly."  In exchange, the CHA agreed to pay each dispatcher the equivalent of two days salary each ($3,193.76 total for all dispatchers), and provide health and dental benefits for November and December 1999.  The dispatchers' collective bargaining agreement did not require the CHA to provide either insurance benefits or the two days' pay.  On June 9, 2000, settlement checks were sent to the dispatchers.  Nolan Hardy and Kenneth Anderson cashed these checks.

On September 1, 2004 (almost five years after their dismissal from the CHA), the plaintiffs filed a complaint alleging CHA violated the WARN Act, 29 U.S.C. §§ 2101-2109.  The district court found that the plaintiffs' WARN Act claims were barred under the settlement agreement and granted summary judgment for the defendant. The plaintiffs now appeal.

## II. Discussion

This Court reviews a district court's grant of summary judgment de novo, considering all facts in the light most favorable to the non-moving party.  Summary judgment is inappropriate if there is a genuine issue of material fact.  *See McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003).

The settlement agreement signed by the FOP and the CHA on May 4, 2000, does not specifically mention the WARN Act.  It does, however, contain other pertinent language:

> [T]he Union hereby forever releases, discharges and covenants not to sue the CHA . . . [based on] any and all claims, demands, suits or grievances of whatever kind or sort, including but not limited to, those arising out of or in connection with its collective bargaining relationship with the CHA, any Collective Bargaining Agreements entered between them, **and arising under any federal,** state, or local **statute**, ordinance or common law, including specifically, but without limitation:  bargaining obligations with respect to the October 12, 1999 decision to cease active operation of the CHAPD and the resulting separation of all of the Union's civilian bargaining unit members from CHA employment on October 29, 1999[.] . . .  This release is to be construed broadly and shall be inclusive of all claims, demands and rights of action that the Union has or may have[.]

The district court found, "The fact that the agreement did not mention the WARN Act by name is not a barrier to enforcement."  Although we have not spoken directly on the applicability of general releases to WARN Act claims, this Court has found general releases applicable in similar circumstances.  "It is well established a general release is valid as to all claims of which a signing party has actual knowledge or that he could have discovered upon reasonable inquiry."  *Fair v. Int'l Flavors & Fragrances, Inc.*, 905 F.2d 1114, 1116 (7th Cir. 1990) (holding that a release of claims relating to employment barred a claim under ERISA) (quoting *Oberweis Dairy, Inc. v. Associated Milk Producers, Inc.*, 568 F.Supp. 1096, 1101 (N.D.Ill. 1983)) (internal quotation marks omitted).

Additionally, we find persuasive the view of our sister circuits that a general release of federal statutory claims applies to the WARN Act.  *See Int'l Ass'n of Machinists & Aerospace Workers v. Compania Mexicana de Aviacion*, 199 F.3d 796, 799 (5th Cir. 2000) ("Neither the WARN Act nor the common law require that the release expressly mention the WARN Act for the releases to be binding.  The releases encompass all claims related to union member layoffs, and any WARN Act claim would be a claim related to union member layoffs. Thus, the affected employees waived their WARN Act claims when they accepted valid releases in exchange for the enhanced separation package." (citing *Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935-36 (5th Cir. 1994), *cert denied,* 513 U.S. 1019 (1994)); *Joe v. First Bank Sys., Inc.*, 202 F.3d 1067, 1070 (8th Cir. 2000) (WARN Act claims waived in a settlement agreement that released the defendants from liability for any claims "arising under or based upon any federal, state, or local employment or discrimination laws, regulations or requirements, including . . . any contract, quasi contract, or tort claims . . . arising from or related to . . . Employee's cessation of employment[.]").

The plaintiffs claim that even if this Court finds that the settlement agreement covers WARN Act claims, they are not bound to the terms of the agreement. The district court found differently:

> [W]e cannot say at this point whether the members personally approved of the agreement. Despite this fact, we find that this agreement is nevertheless enforceable. This is because, whether or not plaintiffs approved of the agreement beforehand, they received and cashed the check as noted above. By accepting the benefits of this agreement, plaintiffs are bound by it.

(citations omitted).

As a result of the settlement agreement, negotiated by their union, the plaintiffs received cash payments, health coverage, and dental coverage. These benefits were not required by the terms of the plaintiffs' CBA and thus qualify as consideration for the plaintiffs' waiver of their WARN Act claims. "[E]ntering into [a settlement] agreement and *accepting the benefits of that agreement* ends the inquiry as to the validity of the settlement agreement." *Castellano v. Wal-Mart Stores, Inc.,* 373 F.3d 817, 820 (7th Cir. 2004) (citing *Joyce v. Year Invs., Inc.*, 196 N.E.2d 24, 26-27 (Ill App. Ct. 1964)). By cashing their checks, the plaintiffs ratified the settlement agreement and thus became bound by its terms. Thus, the defendants have successfully presented an affirmative defense to the plaintiffs' WARN Act claims.

In their attempt to counter the defendants' position, the plaintiffs rely heavily upon *Castro v. Chicago Housing Authority*, 360 F.3d 721 (7th Cir. 2004). In *Castro*, this Court affirmed a verdict against the CHA based on WARN Act claims arising from the CHA's decision to eliminate the police department. Although *Castro* does hold that the CHA is subject to WARN Act claims, *id.* at 729-30, it is inapplicable here.

In *Castro*, the CHA failed to raise the affirmative defense it presented in the instant case. This Court stated:

> The CHA next argues that the class members waived their WARN claims through their unions' settlement agreements. The CHA, however, failed to raise this affirmative defense in its responsive pleadings, and the district court denied the CHA's motion for leave to file the additional defense, a decision we review for abuse of discretion. Because we hold that the district court did not abuse its discretion in denying the CHA's motion, there is no need to consider the merits of the CHA's argument on appeal.

*Id.* at 735. *Castro* went on to recognize that the affirmative "defense may have been meritorious," but could not be considered. *Id.* (citing FED. R. CIV. P. 8(c); *Venters v. City of Delphi*, 123 F.3d 956, 969 (7th Cir. 1997)).

After considering the affirmative defense waived in *Castro*, we find that the plaintiffs' settlement agreement prohibits union members from bringing suit against the CHA under any federal statute. As the WARN Act is a federal statute, the plaintiffs' suit is barred.

## III. Conclusion

For the above stated reasons, we AFFIRM the district court's grant of summary judgment.